CASE 38—PETITION EQUITY—FFBRUARY 24.

# Adams Express Co v. City of Owensboro.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. MUNICIPAL TAXATION—EXPRESS COMPANIES.—While as to useful trades and employments the power of a municipal corporation to license does not ordinarily include the power to tax, yet where useful occupations are, in this regard, placed upon the same footing as those which serve for amusement only, and the municipal charter provides that, in granting such licenses, the common council "shall charge such sum or sums of money as they shall deem fit and reasonable," they are authorized to use the power to license as a means of taxation if they see proper to do so.

2. REPEAL OF STATUTE.—*General* words in a statute should not be construed as repealing by implication a *particular* statute unless they are otherwise inoperative.

  The provisions in a city charter authorizing the city to tax *express* companies does not repeal the provisions of a general law requiring *foreign express* companies to pay a certain tax to the State in lieu of all other taxation.

## STATEMENT OF FACTS.

The appellant, the Adams Express Company, filed its petition in equity against the City of Owensboro, the Owensboro city court and J. B. Karn, city judge of Owensboro, alleging the passage of an ordinance by the city council requiring each express company having an office in the city to pay an annual license to the city of $25, and providing a penalty for engaging in such business without first having obtained a license. It is alleged that said charge of $25 "is grossly excessive, beyond the fit or reasonable expense of said city in issuing

license, maintaining its license department and all expenses incidental thereto, and is in fact a tax for revenue purposes." It is further alleged that after the passage of said ordinance the city of Owensboro caused a prosecution to be instituted against the plaintiff in the Owensboro City Court for carrying on its said business in said city without a license, "and threatens, and is about to, and will, unless restrained by the order of this honorable court, prosecute said cause, and from time to time this plaintiff, in said court, for the daily alleged offense of carrying on its said business." The prayer of the petition is " for an order of injunction enjoining and restraining the defendants and all others from asserting the validity of any ordinance imposing a license upon this plaintiff, and from proceedings under any such ordinance to prosecute the plaintiff or its agent, and that such injunction be perpetual." A demurrer to the petition having been sustained and the petition dismissed, the plaintiff has appealed, making the city of Owensboro alone an appellee.

HALLAM AND MYERS FOR APPELLANT.

1. As the general law exempts *foreign* express companies from all *local* license burdens, appellee's charter must be construed in harmony therewith by holding that it is meant to include only *local* express companies. (Adams Express Co. vs. City of Lexington, 83 Ky., 657.)

2. As to the useful occupations the power to license does not include the power to tax. (Dillon on Municipal Corporations, sec. 291; St. Louis v. Boatmen's Ins. Co., 47 Mo., 152; State v. Hoboken, 33 N. J., 282; Freeholders of Essex v. Barber, 2 Halst., 67; Home Ins. Co. v. Augusta, 50 Ga., 530; Mays v. Cincinnati, 1 Ohio St., 272.) Municipal corporations can levy no taxes unless the power be plainly and unmistakably given. (Caldwell v. Rupert, 10 Bush, 182.)

3. While the power *can* be delegated to a municipality to tax the property of non-residents found in the limits or their avocations carried on there, the grant should be very plain, and should never be extended by any sort of implication to such an avocation as may be only partly carried on there. (Falmouth v. Watson, 5 Bush, 662; Commonwealth v. Stodder, 2 Cush., 572; Brown v. Maryland, 12 Wheat., 448.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The charter of the city of Owensboro, approved March 18, 1882, by subsection 36 of section 10, provides : '' The common council shall have power to grant licenses to the following persons and business,

and provide, by ordinance, adequate penalties for doing business without license, viz: Tavern-keepers, innkeepers, retailers of spirituous liquors, * * * concerts, menageries, astrologers, circuses, * * * *express companies*, telephone companies," &c. (Acts 1881, vol. 1, p. 817.)

It is urged that the power to *license* does not include the power to *tax;* and that the distinction between the power to license as a *police regulation*, and for the purpose of *taxation*, must be kept in view. In the one a reasonable fee for the labor and expense of issuing the license can only be charged, while in the other it becomes a source of revenue

It is not usual to resort to a tax upon useful occupations for revenue. The law draws a distinction between them and those which are harmful or serve merely for amusement. Judge Dillon says: "Concerning useful trades and employments, a distinction is to be observed between the power to 'license' and the power to 'tax.' In such cases the former right, unless such appear to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged. Respecting amusements, exhibitions, &c., the authority of the corporation under the power to license has been regarded as greater than when the same word is employed as to trades and occupations." (1 Dillon's Municipal Corp., section 357.)

This rule is supported by the cases of St. Louis v. Boatmen's Ins. Co., 47 Mo., 152; Freeholders of Es-

sex v. Barber, 2 Halst., 67, and Mays v. Cincinnati, 1 Ohio St., 272.

A license may or may not include a tax. It is noticeable, however, that the charter provision *supra* includes both useful occupations and those which serve for amusement only; they are all put upon the same footing; and subsection 37 provides as to all of them: "And in granting such licenses, as by this act the common council is authorized to grant, they shall charge such sum or sums of money as they shall deem fit and reasonable, and annex to such licenses such terms and conditions as in their opinion the peace, good order and general interest of the city may require."

This last provision enlarges the scope of the preceding one, or at least shows that it was "the legislative intent" to confer upon the city council full power over the subject; and to authorize them to use the power to license as a means of taxation if they saw proper to do so.

It is urged that the words "as they shall deem fit and reasonable" must be construed to mean "as *are* fit and reasonable;" and authorize the imposition of a fee only for the issual of the license. There might be some ground for such a construction if they related to *useful* occupations only. The words "sum or sums," as used in the act, do not mean merely "fee or fees.' The sum to be charged is not for issuing the license, but for the license itself.

The construction contended for leads to absurdity. If it be correct, and express companies can only be charged a license fee, then a saloon-keeper can be

charged no more. It also follows, that however proper it might be to charge one calling more than another, yet it can not be done.

It is true subsection 27 authorizes the council, in its discretion, to license and tax places of amusement. Under it they may refuse to do so, and thus prohibit the business, because it says that they shall not be carried on without the license. Under subsection 36, however, they may or may not require the license; but can not prohibit the avocations therein named, and it enumerates useful occupations and those of amusement without distinction; and subsection 37 applies equally to all. The appellant is, however, a foreign corporation. By the act of March 2, 1870 (Acts of 1869–70, vol. 1, p. 33), *foreign* express companies are required to pay a certain tax to the State in lieu of all other taxation. It expressly provides that they " shall not be required by any county, town, *city* or other corporation or local jurisdiction in this State, to take out or obtain any other or additional license, or to pay any other or additional tax or sum of money for the right or privilege of conducting its business in or through such county, town, city, corporation or other local jurisdiction."

Clearly this act was not *expressly* repealed by the provision *supra* of the Owensboro charter. The latter is not an amendment of the former, and can not be considered as repealing the exemption unless by *implication.*

*General* words should not be construed to so operate as to a *particular* statute unless they are otherwise inoperative.

The act of March 2, 1870, indicated an intention upon the part of the State to exempt *foreign* express companies from local taxation by the payment of the State tax; and we are now asked to suppose that it intended to reverse the policy so announced as to and for the benefit of one particular city or *local jurisdiction*.

In the case of the Adams Express Co. v. The City of Lexington, 83 Ky., 657, where a provision of the charter of the city of Lexington, identical in substance with the one now under consideration, in fact almost *totidem verbis*, was in question, it was held that the Legislature did not by its enactment intend to repeal as to one particular municipality the exemption in favor of *foreign* express companies existing by virtue of the act of 1870 as to the towns and cities generally of this Commonwealth.

That case is decisive of this one, and the judgment below is reversed, with directions to overrule the demurrer to the petition, and for further proceedings consistent with this opinion.